311-0143, Mr. Marcotte, appellant by Thomas McGuire v. Village of Grant Park, et al., at the lease by Michael P. Mr. McGuire. Thank you. Good afternoon. May it please the Court. The first thing I'd like to mention is when I took this case, because as a former chief of police, I was fascinated by it. When I was a young chief of police some 35 years ago, I had a situation where members of the Civil Service Commission were selling tests to applicants. And I took the matter to the State's Attorney's Office, and the State's Attorney's Office basically said, What are you looking for? And I said, Justice. And the State's Attorney basically said, What's that? And nothing ever happened to the Civil Service Commission, but I was terminated from my employment as chief of police. And as a result of that, life goes on, I became a lawyer. So my past experience caused me to take this case. The second reason I took it was fascinating to me. Fascinating in the sense that you have a chief of police running a prostitution ring out of the police department. That, to me, was absolutely amazing. Now, that's the background of why I took the case. Let me get into the case. This case is basically about an ordinance. It is Grand Park Ordinance 1-9-7, which is found, the applicable section, on page 4 of Mark Hott's initial brief. The pertinent portion says, and I quote, The village may generally, and the key word is generally, discharge a person without the requirement of providing a list of reasons for the firing or a hearing. Generally. That, to me, means there's exceptions. The phrase, actions speak louder than words, in my opinion, apply to this situation. The village of Grand Park could have said in the ordinance, but did not say, that at all times, an employee of the village is termed while at will. In other words, no exceptions. Actions speak louder than words. Instead, what occurred, they gave them a hearing of the type that normally occurs before a board of fire and police commissioners or civil service commissioner of a municipality. They gave them that hearing by filing charges, a complaint, with the police committee, the special prosecutor. There was a court reporter present. People were under oath, subject to cross-examination. There was direct and cross-examination, and then there were findings of fact. Findings of fact by the police committee, which is made up of three trustees of the entire six-member board of trustees. And eventually, the entire board of trustees, with the exception of one person, says, To Malacat, with 19 years of service, you're fired. And the mayor agreed. He was fired. It's opposition, but by their actions, we fit within the exceptions. Actions speak louder than words. Now, in the sense of, could they have fired them? Sure. Without a hearing? Well, if that was truly the law, the record shows that there was what is called a formal interrogation under the terms of the Uniform Peace Officers' Disciplinary Act. In that formal interrogation, the transcript of which is in the record, Malacat admitted everything that occurred. He said everything. No, he didn't lie. There was no misleading. He basically said about the gun situation, Yes, I purchased that gun from the widow. Here's the gun back. He admitted everything. So, because he admitted everything, there was no need for a hearing. And yet, they gave him a hearing. Actions speak louder than words. The issue before the court really comes down to looking at the witness in question and making a determination, did the generality apply or did the actions speak louder than words apply? In this case, the circuit court initially made a decision to reverse the termination of the appointment and remanded the matter back to the village. Then, before an order could be issued on that point, counsel comes in and basically says, He wasn't entitled to a hearing. Makes no difference. He's termed with full at will. The circuit court agreed. And that's why we're here. I'll answer any questions, of course, that the court may have. Let me just ask you, you posed the question, if the ordinance is said otherwise, taking out the word generally and saying in all instances, it would be terminable at will. Well, we know that couldn't be. I mean, a terminable at will employee under the law can be terminated for any reason, as long as it's not the wrong reason for action. So, changing that statutory language wouldn't take out the fact that there are certain legal exceptions to being terminable at will. For example, you know, race, religion. Retaliatory discharge. Yes. And it's our position this was retaliation because what Marquardt, it's all found in the statement of facts. Marquardt became, was cooperating with the FBI and Internal Revenue Service as to their investigation of the chief running the prostitution ring out of the Grand Park PD. The chief of police was aware the day that the situation of the gun happening, what I'll call, with all due respect to the court, the gun cabler. When that gun situation occurred, the chief of police was aware of it that very day. A year goes by and he becomes aware that Marquardt is cooperating with the FBI and the IRS, then he starts coming after the chief. I'm sorry, after Marquardt. The rest is history. Mr. McGraw, when I looked at the ordinance in question, it looked like it was primarily relating to village officers. Not police officers, but officers of the village. And then there's this little line in there about employees. Yes. Is that the only section of the ordinance that applies to police officers, arguably? Yes. What about, is there a, there was reference to a manual of rules and regulations and policies for police officers? Yes, there was a manual, yes. Does that give any rights to a hearing? Memory doesn't allow me to answer that. If there was, I can only give the alternatives. If there was something in the manual, it's our position that the ordinance would prevail over the manual. But to more specifically venture in, straightforward, to the best of my knowledge, there was nothing in the manual that said he's entitled to a hearing. Okay, and I think Judge Runselman in his first order, reversing the decision of the board, made reference to the section, the rule under which Marquette was discharged, that he was the only person who had ever seen it, the sheriff or the chief? Yes, there was, I think this is what you're referring to. There was a, supposedly a general order of the police department, something to the effect of setting down a procedure if a citizen calls and says they want a gun destroyed. And during the formal interrogation under UPOLA, Uniform Peace Officers Disciplinary Act, Marquette stated, he wasn't on the oath, stated that he had never seen that. And during the course of the hearing, three other police officers who were on the department at the same time as Marquette also testified. The only, so along with Marquette on those lines, the only person who ever testified that there was such policy was the indicted chief of police who subsequently pled guilty to the prostitution. So, apparently Judge Runselman thought that Mr. Marquette was discharged pursuant to a rule or regulation that had not been generally promulgated to the police department? I think at least in part he did, although quite frankly it's not clear to me. I don't, I do remember that which surprised me that the honorable judge, and I say that respectfully, the honorable judge, when he remanded the matter back to the board, basically said, and I'm paraphrasing, look at your rules and see if there's something else to be violated. And that bothered me. And I made a motion on that, but we never got to that motion. Well, I mean, I get your point, but you know, we have some similarities in our background. I was never a chief. I worked for a living as a patrolman. But, you know, the fact that this, your client was basically acting as an informant, or, you know, does that absolve him legally of any other sins he may have committed as a police officer that would be fireable offenses? Oh, of course not. Of course not. No, absolutely not. He doesn't have insulation. But the point is that as I, their position, the position of the village was he was terminally ill, he never should have gotten a hearing. And I, my position looking at the ordinance, I look at the exception, I say, the devil, you're wrong. I think he should have gotten a hearing because of that exception. And, once again, actions speak louder than words. That's all I have, unless the court has any additional questions. I thank the justices. I'm sorry. Mr. Canegar? Yes, sir. May it please the court. I've had many cases with Mr. McGuire, and I respect his life experiences. I expect the zeal he demonstrates for his clients. But we're here reviewing Judge Wendelman's granting of a motion to dismiss count one of a complaint. Mr. McGuire can press all the other claims on behalf of his client on counts two, three, and four of the complaint. All we care about today, respectfully, is whether Judge Wendelman, as a matter of law, made the right decision. All we can consider is Mr. McGuire's own complaints and any materials offered by the village under 2-619 in response to that complaint, as well as the village's answer. Now, there's a presumption. The whole thing about what does this section say, 1-9-7, it is inartfully drafted. It goes from officers to employees. It is what it is. But the important thing to remember is that there's a presumption that all employees in Illinois serve at will. That is the presumption. It's when they don't serve at will that you put it in there. You prescribe a period, a term. You prescribe a just cause standard, which is the most common way of establishing a property right in employment. That's not in there. There's no limitation on the village's ability to terminate an employee based upon that provision. And it does say that they can generally be terminated without notice or a hearing. Well, it does say that. But the cases in Illinois uniformly hold that if you do make a decision to give an employee an at-will employee pre-termination due process, that does not convert him to a property right. Property rights aren't found in procedures. They're found in substantive provisions of contracts, statutes, ordinances, policy manuals, and mutual understandings. And none of that is alleged in the complaint. And you cannot read Section 1-9-7 to confer a property right on Officer Markup. And, again, under Illinois law, both the state cases as well as the federal cases interpreting Illinois law and Section 1983, the mere fact that you decide to provide someone with due process does not mean they have a property right in employment. So I think I understand the argument. I just don't think it's supported by law. I don't think Mr. LaGuardia has offered any case, not a single case, which supports that proposition. You know, I don't know what else I have to add to that because the focus he had in this case is on the statute or on the ordinance, excuse me, and the focus is on the word generally. The word generally says that the village has a choice. Now, if I have a choice when to give you a hearing and when not to give you a hearing, that certainly is not an entitlement to something, which is required to establish a property right. Again, Mr. Mark had ample opportunity to talk about or make his claim as to why he was terminated, whether it was wrong. But based upon the facts in the complaint, based upon what this court is confined to looking at, he has not established, he has not put forth anything supporting a reasonable inference that he had a property right in employment. And again, the mere fact that the village gave him, interrogated him, gave him charges, gave him notice, gave him a hearing, that's of no moment on whether he had a property right in his job. And Mr. LaGuardia has failed to cite a case which supports that proposition. Thank you very much. Okay. Thank you, Mr. Gangar.  If indeed he was a terminable at-will employee, why did the village do what it did? We have several hundred pages of transcripts. We have many exhibits. We have witnesses. Well, let me ask you this. What did it reveal, if you could, directly with Mr. Gangar's argument? If you were of any law that said that by granting him this due process and this hearing, that that would convert him into something other than an at-will employee? I cannot recall. I have the brief, obviously, that's been filed. I'll stand on the cases. I can't recall one specifically right now. I do remember, for example, well, let me just say this. You don't insert the words of a statute and ordinance to lead to absurd results. If he didn't have a right to a hearing, why did they give him one? By giving him that hearing, they basically said they ruined his career in their statement of facts, their findings of fact, and in their decision to terminate. I guess the key point here is this ordinance, and that's word generally, and then add on to it the actions. And by having the actions and doing what they did, that takes him out of the category of terminable at-will. That's the position. As for the cases, I'll just stand on what's in the brief. All right. I thank the court. And we thank you, Mr. McGuire, for your arguments here today, and likewise you, Mr. Gangar, thank you for your arguments. This matter will be taken under advisement.